**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LINDA S. FREEMAN,**

                **Plaintiff,**

**v.**                                                            **Case No.  8:05-cv-1933-T-TBM**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States**
**Social Security Administration,**

                **Defendant.**
_____/

**O R D E R**

        The Plaintiff seeks judicial review of the denial of her claims for Social Security

disability benefits and Supplemental Security Income payments.  For the reasons set out

herein, the decision is affirmed.

I.

        Plaintiff was fifty-two years of age at the time of her second administrative hearing in

August 2004.  Plaintiff has a high school education and past relevant work as a dispatcher and

supervisor of dispatchers for the Hialeah Police Department.  Plaintiff filed her instant

applications for disability benefits and Supplemental Security Income (hereinafter "SSI")

_____

        [1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007.
Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should
be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

payments in April 2002, alleging disability as of November 6, 1998, by reason of extreme pain in her back and legs.[2]  Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  The Plaintiff was represented at the hearing by counsel and testified in her own behalf.  Additionally, a vocational expert was called by the ALJ.  In essence, Plaintiff claimed that she was no longer capable of working at any job because of severe pain in her back and right leg.  By Plaintiff's account, she retired from employment as a supervisor of dispatchers with the Hialeah Police Department when she was no longer physically capable of performing the job.  According to Plaintiff, her back condition prevented her from sitting for very long.  She first injured her back in 1992, and she re-injured it in 1996.  The pain evolved to such a level that even working part-time became impossible, and so she retired with a service and disability connected pension.

By Plaintiff's testimony, she is unable to sit for more than twenty to thirty minutes before she experiences pain in her leg and has to get up.  She can sit for longer periods if she elevates her legs, for instance two to four or five hours in a recliner at home, but she denied that she could sit for six hours at a job.  She can stand still for only three to five minutes because of a numb spot in her right leg, and she can walk for no more than fifteen to twenty minutes before she experiences discomfort.  Plaintiff testified that bending and kneeling

---

[2]Plaintiff originally filed an application for disability benefits in November 1999, alleging disability as of October 20, 1998, due to a low back injury.  Her claim was denied initially and on reconsideration, and she requested a hearing.  A hearing was held on September 26, 2001.  By decision dated October 29, 2001, an Administrative Law Judge denied Plaintiff's claim for benefits.  Plaintiff requested review of that decision, and the Appeals Council denied her request for review on September 13, 2003.

aggravate the pain and she is only able to climb one step at a time.  She stated that she cannot carry a gallon of milk and juice at the same time.  To alleviate the pain, Plaintiff takes Darvocet, tries to keep her feet elevated, stretches out in the bed, and uses heat.  She also has undergone epideral treatments, which helped relieve the pain for four to six months.  Plaintiff described the pain as constant and dull.  On a good day, the pain is at a level two to three on a scale of one to ten.  On a bad day, her pain is at a level eight and extends not only throughout her low back but into her right leg as well.  According to the Plaintiff, the pain wakes her throughout the night and she also experiences numbness in one part of her right leg.

Plaintiff claims a limited daily regimen around the house.  She acknowledged doing some dusting, minor cooking, and laundry and she grocery shops once every couple of weeks.  However, Plaintiff relies on her friends to help keep her place clean.  She occasionally eats out, but does not go to the movies because she is unable to sit comfortably throughout the movie.  She has been given an exercise regimen, but she admits she does not always follow it.

In addition to her back and leg impairments, Plaintiff was hospitalized with chest pain a week prior to the hearing and doctors implanted two stents.  She also suffers from allergies and chronic lymphocetic leukemia.  She was diagnosed with that condition in 1995 but she acknowledged it is unrelated to her claim of disability.  Plaintiff also alleged that when her condition is really bothering her and the pain extends into her leg, her leg will sometimes give out and she will lose her balance.  See Plaintiff's testimony (R. 243-62).

The ALJ also took testimony from Allen Freeman, a vocational expert (hereinafter "VE").  The witness testified on an assumption of a person of Plaintiff's age, education, and

work experience, capable of performing light exertional work that does not require more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and does not require climbing of ladders, scaffolds, and ropes or exposure to unprotected heights and/or concentrated exposure to dangerous machinery, including extreme vibration. On this assumption, the VE opined that Plaintiff could still perform her past work as customarily performed in the national economy and as she described it. Assuming the individual could perform sedentary exertional work with similar limitations plus the need for a sit/stand option at thirty minute intervals and the need to elevate the legs to waist level for three to four hours during the work day, the VE opined that Plaintiff could not perform her past work or any other type job. On an assumption of a person limited to the degree assessed by Dr. Paul Hughes in June 2004, the VE again opined that Plaintiff could not perform any type job. See VE's testimony (R. 262-70).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of January 20, 2005, the ALJ determined that while Plaintiff has a severe impairment related to lumbar degenerative disc disease, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work activity. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could still perform her past work as previously performed and as generally performed in the national economy. Upon this conclusion, the Plaintiff was determined to be not disabled.[3] (R. 16-23).

_____

[3]The ALJ adjudicated the period between October 30, 2001, and the date of decision, concluding that the period prior to October 30, 2001, was barred from re-adjudication under

4

The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to

_____

the doctrine of *res judicata*.  (R. 16, 22).  As noted above, Plaintiff had filed a prior application in 1999 that was ultimately adjudicated and denied by a different ALJ in a decision rendered October 29, 2001.  See (R. 38-44).

the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

6

(1) The ALJ erred in not giving great weight to the opinion of Claimant's treating physicians that Claimant was disabled; and

(2) The ALJ erred in not correctly analyzing the finding by another agency that Claimant was disabled.

By her first claim, Plaintiff contends that treating physicians issued a number of statements reflecting her inability to work a full eight-hour workday.  More particularly, Plaintiff cites to the medical records from Drs. Wayne Case and Paul Hughes.  By this argument, Dr. Case found Plaintiff capable of sitting for one hour total in an eight-hour workday and standing/walking for one hour total in an eight-hour workday, thus limiting Plaintiff in a manner that barred her from all jobs.  Similarly, according to Dr. Hughes, Plaintiff could stand or walk for less than one hour in an eight-hour workday and sit for less than one hour in an eight-hour workday.  By Plaintiff's account, the ALJ ignored these opinions and erroneously concluded she was capable of light exertional work on the basis of a non-examining doctor's opinion.  (Doc. 13 at 15-17).

In response, the Commissioner acknowledges the standard applicable to the testimony of treating doctors but urges that neither of the doctor's opinions in this case were entitled to controlling or even significant weight.  In the Commissioner's view, the ALJ adequately discounted those opinions as conclusory and disproportionate to the doctors' own objective findings, as well as other medical evidence of record, and they based their opinions mainly on Plaintiff's subjective complaints.  Thus, the Commissioner urges that the physical

findings of Drs. Case and Hughes were not so remarkable as to support the conclusions and the medical record otherwise supported the ALJ's conclusions.  (Doc. 14 at 5-9).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d).  Good cause for rejecting a treating physician's opinion may be found where the opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the opinion was conclusory or inconsistent with the doctor's own records.  Lewis, 125 F.3d at 1240.  The report of a treating physician also may be discounted when it is not accompanied by objective evidence.  Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991).

Upon close review of the medical record, I am obliged to conclude that the ALJ demonstrated adequate cause to discount the opinions of Drs. Case and Hughes as related to Plaintiff's physical capabilities.  Here, as noted by the Commissioner, the ALJ concluded that the assessments by both treating physicians were conclusory, disproportionate to their own objective findings, disproportionate to other medical evidence, based mainly on Plaintiff's subjective complaints, unsupported by any objective evidence, and in the case of Dr. Case, inconsistent with other assessments.[4]  (R. 21).  A review of the medical records of both Dr. Case and Dr. Hughes establishes that there are few, if any, clinical findings that would support

---

[4]In addition to finding Dr. Case's two assessments inconsistent, the ALJ noted that his limitation for reaching and handling and the need for elevating the legs and using an assistive device were not supported by the doctor's own treatment notes.  (R. 21).

the dramatic restrictions imposed by these doctors' assessments.[5]  This is particularly so in relation to Dr. Hughes' records.  Nonetheless, in both cases the reports generally reflect Plaintiff's subjective complaints and conclusions of degenerative disc problems and conservative treatment by way of medication.  At the time of Dr. Case's assessments in October 2002, I can find no objective evidence in the record to support his opinions.[6]  The conclusion that these doctors' physical examinations were unremarkable and that their conclusions were disproportionate to their own objective findings is likewise revealed from a review of their notes.  When the doctors' reports are reviewed in their entirety, the conclusions reached in their assessments are, in fact, conclusory and lacking in support in either the clinical findings or the objective evidence.  Thus, the ALJ was not required to afford controlling weight to their assessments.[7]  See Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583.

---

[5]To the extent Plaintiff complains that the ALJ removed certain of Dr. Case's treatment notes from the administrative record because they did not relate to the adjudicative period before him (Doc. 13 at 5), it is worth noting that neither Plaintiff nor her attorney objected to the ALJ doing so.  See (R. 242-43).

[6]The doctor does reference an MRI, however, the reports I find in the record are dated subsequent to the time of the doctor's assessment.  See (R.128, 178-79).

[7]This is particularly so in relation to Dr. Hughes's report.  In his case, it is not apparent that he even reviewed objective medical evidence that was available to him before rendering his rather severe and restrictive assessment.  See (R. 163-70, 180).  Insofar as there are some inconsistencies in Dr. Case's two assessments regarding Plaintiff's ability to sit and stand, the inconsistencies are relatively minor and would not cause me to conclude that the doctor's report should be rejected for this reason alone.  Insofar as Dr. Case found functional limitations regarding reaching, handling, feeling, pushing, and pulling, they do appear unexplained by his medical reports and are not otherwise explained in his assessment.

Beyond the reports of these two treating physicians there is little other evidence reflecting on Plaintiff's back condition except that provided by the consultative examiner and the non-examining doctors.  The reports of Dr. Joel A. Coplowitz, who performed a consultative examination in December 2002 and then again in March 2003, reflect little by way of functional capacity assessment.  By this doctor's physical examination, Plaintiff evidenced no joint swelling, tenderness, or deformity, and had full range of motion in all joints.  The doctor noted mild paraspinous spasm and mild limitation in range of motion in the LS spine in flexion.  Concerning her neurologic condition, the doctor found Plaintiff's coordination, motor skills, and sensory perception to be normal, as was her gait.  He further observed that she was capable of getting on and off the examining table and changing from a lying to a sitting position without difficulty.  (R.127, 138).  As for the non-examining state agency doctors, the first doctor found Plaintiff capable of medium exertional work with limitations and the second such doctor found Plaintiff capable of light exertional work with limitations.  (R. 129-36, 139-46).  Plaintiff is correct that the report of a non-examining doctor is entitled to little weight if it contradicts an examining or treating doctor's report and, standing alone, cannot constitute substantial evidence.  See Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).  However, contrary to Plaintiff's contention, I conclude that the ALJ did not err by relying on the opinion of the non-examining doctor in this case because he stated adequate good cause for discounting the functional assessments of Drs. Case and Hughes.[8]

---

[8]Plaintiff's complaint that the ALJ should not have relied on the non-examining doctor's opinion of May 2003 because the doctor did not review the entire record is not persuasive.  The only medical records relating to Plaintiff's back that were not in the record at the time of the doctor's review were those of Dr. Hughes and the ALJ adequately discounted his opinion.

See Edwards, 937 F.2d at 584-85 (providing that ALJ did not err in relying on opinion of non-examining doctor where the doctor's opinion was consistent with the opinions of examining doctors); Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986) (holding ALJ did not err in crediting reports of non-examining doctors where ALJ stated good cause for rejecting opinions of treating doctors).

By her second claim, Plaintiff argues that the ALJ failed to give adequate weight to the disability determination by the City of Hialeah.  By her argument, the ALJ entirely ignored the disability determination and, while such findings of disability by another agency are not controlling, they are relevant for consideration and entitled to great weight.  She urges that the ALJ's conclusion that she could perform her past work is directly in conflict with the decision of the City of Hialeah and a remand is necessary so that the ALJ may properly address the determination by the City of Hialeah.  (Doc. 13 at 17-19).

In response to this claim, the Commissioner urges initially that Plaintiff provided minimal evidence concerning the City of Hialeah's disability determination and she did not present any evidence that the standard imposed in reaching such determination was consistent with that set forth in the Act.  To this end, the Commissioner notes that Plaintiff testified at the hearing that her retirement from the City of Hialeah was a *combination* of service and disability.  While conceding that such determinations are entitled to consideration, the Commissioner urges that they are not binding and, in this case, a remand on this basis would serve no useful purpose as it could not alter the substantive evidence presented by the Plaintiff and considered by the ALJ.  (Doc. 14 at 9-11).

In this circuit, the rule has long been that the findings of disability by another agency, although not binding on the Commissioner, are entitled to great weight.  Bloodsworth, 703 F.2d at 1241.  Similarly, under the Social Security regulations, such disability determinations by other governmental agencies, based as they are on their own rules, are not binding on the Commissioner.  See 20 C.F.R. §§ 404.1504, 416.904.

Upon careful consideration, I conclude that any error committed by the ALJ in this regard is harmless.  Here, the "disability determination" to which Plaintiff refers is that in a one-page letter from the City of Hialeah Employees' Retirement System dated July 22, 2004.  By that letter, it was reported that Plaintiff was "a retired Police Communications Supervisor of the City of Hialeah Police Department as of October 20, 1998 (Disability Retirement)," and that she was receiving a lifetime pension on a monthly basis.  (R. 114).  Although the ALJ did not recount this evidence in his decision, he clearly was aware of it as Plaintiff testified at the hearing that she retired in 1998 and that her retirement was a combination of service and disability.  (R. 244-45).  Other than the letter and Plaintiff's limited testimony, the record contains nothing further on this point.  While the ALJ should have addressed this evidence and explained his seemingly contradictory finding that Plaintiff retained the ability to perform her past work of dispatcher, under the circumstances I am unable to conclude that his oversight constitutes reversible error.  Notably, the letter from the City of Hialeah does not include a determination of disability as such is typically defined by the Social Security Administration.  Other than indicating that Plaintiff's retirement was a disability retirement, no finding of disability or percentage of disability was provided and no definition of disability

12

was given.  Additionally, the letter does not indicate how service and disability were allocated.

Given these omissions, to the extent that the ALJ erred by not addressing in his decision the

letter from the City of Hialeah,[9] I find that any such error is harmless.  See Diorio v. Heckler,

721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error rule to an ALJ's misstatement

of evidence in a Social Security case); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)

(stating that the court will not vacate a judgment unless the substantial rights of a party have

been affected); Fed. R. Civ. P. 61.  In any event, the statement of disability was not binding on

the Administration.


IV.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the

Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 23rd day of March 2007.


THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of record

---

[9]To this end, the Eleventh Circuit has recognized that "there is no rigid requirement
that the ALJ specifically refer to every piece of evidence in his decision."  Dyer v. Barnhart,
395 F.3d 1206, 1211 (11th Cir. 2005).